May it please the Court, Terry Slominski. I'm representing the appellant stations West in this matter. And our key issue in the case is whether the trustee in the foreclosure of the ARCO BP gas station strictly complied with the Oregon foreclosure statute. Strict compliance has always been believed to be correct. In fact, the Stafford Shire case cited in our brief a couple years ago kind of set it up one more time that it has to be filed strictly. And we claimed that there was a defective notice. The trial court never ruled on the issue of whether the notice was defective. Instead, the court … You're talking about the notice of default, election to sell? That is correct, Your Honor. The trial court, instead of finding that the notice was defective, stated that we failed to describe how it was defective. Although we described it in two particulars. One, failure to set forth the mailing address of the trustee. But it was on there. I don't understand. I agree. That's not my best argument, but it's up on the top for return to. Yeah. And though it might be reasonable … Well, let me just take one second and look at the notice and see that there may be a minute where there's compliance. Well, the notice of default, I think what we're looking at is substantial compliance on that issue rather than strict compliance. Because it doesn't set forth that this is the mailing address. It could be – remember, this is for the public notice, the filing of the – the recording of it. The grantor and others receive a notice of sale. And now the notice of sale was set forth. It is in our – it is in the materials right after the notice of default. And that was set out and set forth that this was his mailing address. In the opposite of the notice of default, it was only on the top. As far as the public would know, that might be just a depository for returning documents. But our key argument really is the issue of the trustee does not set forth the sum owing on the obligation. And that's a very simple question. It's not hard for a trustee to state in the deed of trust what the – Isn't that there? No, it is not. What it states is – It's 2,099,280.77. Together with interest at the default rate plus attorney fees plus late charges. Yes. It says the sum owed. It doesn't say pick one and then add some additional verbiage that we can add more money to. It's not hard for a trustee to state in the deed of trust how much money is owed on the day that they file the notice of default. Well, it's also probably not hard to get that information. Of course, you already knew it anyway, so. But never mind that. Well, I'm – Assuming you didn't know it, to ask. But that's not what the statute requires. There's a strict – Well, yeah, but you – I mean, obviously, as of any particular date, these are – these are floating figures. The principal balance is principal balance, but the rest of it depends upon when the date of foreclosure occurs. But it's not a floating figure on the day they file the notice of default. On the date of the notice of default, they know how much money they have spent on the case, how much their attorney fees are, and they know how much the interest. It doesn't even say what is the default rate. This $2 million could be $5 million, as far as the public would know. It wouldn't make any difference. It could cause people not to want to be interested in bidding at a sale. If I were interested in it, it wouldn't take me a second to call or write and say, so right now, what's your best estimate as to what it's going to be in two weeks? That's true. And that's what a relatively sophisticated person and probably even – the real problem is, is this is a procedure that is different than the common law. They basically have a right to take someone's property without judicial supervision, and all they have to do is follow the statutory rule. It's just a question. If, Judge, if you were correct, then basically all you have to say, we're defaulting because this guy owes us money. And certainly someone could call. It is not much better to say the amount owing on the obligation is so much – is $2 million plus a whole bunch more money, which you're going to have to call us. And it doesn't say that in there. It doesn't – I mean, a person wouldn't – wouldn't have no way of figuring that out, is how much was owed. And you shouldn't have to call. It doesn't say you have to call. Of course, in this case, it wouldn't have made any difference, would it? Pardon? In this case, it would not have made any practical difference if all those additional charges were specified, because he wasn't going to come up with $2 million plus anyway, right? That's – we don't know that, and that's not the initial – maybe back to the other argument on appeal. It really doesn't make a difference in this case, does it? Why is that? I don't understand why it wouldn't make a difference. Because there's no way, you know, whether the amount was 2 1⁄2 or 3 1⁄2 or 5, it doesn't make any difference. The Court never – there was never an issue before the Court whether he could or not. And that really brings up the appeal here on the – it's the 86-742. The judge – their defense was under 86-742, he had to prove just exactly as you said, Your Honor, that he would have come up with the money. That is incorrect. The 86-742 says that is – that is the remedy. And the 86-742 expressly applies to those people entitled to notice under 86-740, sub 1, sub c, which refers to junior lien creditors and those taking subsequent to the recording of the deed of trust. It doesn't apply. And I asked the clerk to give you a copy. We should have attached – all of us should have attached a copy of that statute to our briefs. But if you look at 86-740, 1c, which is the only application which enables 86-742, it just simply does not apply. And that isn't the remedy. I assume that the – Anything else? Yes. And then the issue on the trespass and the conversion. The Court did not find that there was no conversion. It found that the Stations West failed to adequately describe the equipment and the value, even though Mr. Hussain's declaration stated that the equipment and the inventory at the time that he left was worth approximately $100,000. That is adequate as value. The issue of whether value is – the proper value really wasn't an issue for summary judgment. The issue is whether a conversion existed. There was evidence that there was property on the premises. That evidence came from BP's own documents. They had a video with pictures of all the equipment and inventory. Now, they might want to say that they think that's bad or it's not good stuff, but there was property, and you can see computers and all kinds of equipment on the premises when they took over. Now, that's as to the conversion. As to the lockout and as far as the trespass, the Court said that basically we could not claim that he was locked out before the foreclosure sale, assuming even a valid foreclosure sale, because we had alleged in the amended complaint that the lockout occurred on or about November. Well, generally, the courts have held on or about doesn't mean any date. It could have been a month before or months later. It's just a general guideline when people file complaints as to when things occurred. So getting back to it, I believe that there was a trespass and there was a conversion, and the main issue is the 742 simply does not apply by its own terms. It only applies to those people entitled to notice under 86-740-1C. Thank you. Thank you. May it please the Court, my name is Doug Barry. I represent the defendant below BP West Coast Products, or just simply BP. And I'll try to reserve a couple of minutes to my colleague representing Joe Parker, the trustee. I think it's important at the outset to step back here and to note that this appeal, in fact, this very case, arises because it was Station West which defaulted on a loan. It was a loan that obviously the bank tried everything in its power to avoid that default. It extended for almost a period of a year the maturity date on the loan. Certainly, Stations West tried to avoid that default. It looked very hard for takeout financing to pay the debt that was due but couldn't find it. And obviously, Stations West and its owners, you can say, did not have the money to pay that debt. Because of that, because of that, there was a foreclosure. Now, in this case, there's really no contest that the debt could not be paid. What is contested is an alleged technical violation of the notice of the foreclosure issued by the trustee. But there was no violation, there was no technical violation of the notice provisions under Oregon law. The contention is that the notice of foreclosure does not set forth the name of the trustee, but the trustee's name is the very first thing that appears on the notice of foreclosure. Now, there's no requirement under Oregon law, no precise requirement that the trustee's name appear in a certain place in the notice of foreclosure. Certainly, counsel has cited no authority whatsoever that the trustee's name and address has to appear in a certain place within the notice of foreclosure. And in fact, it defies common sense because the very purpose of notice is to identify, to give notice is to the people involved who the trustee is and what his name and address is. There's no dispute here that Stations West did not know who the trustee was. In fact, they were conversing with each other before the foreclosure sale took place. The contention that the notice fails to identify the precise amount due is also without merit. There is no requirement in the statute that at the initial notice, there has to be a precise statement of the interest, attorney's fees, trustee's fees that may have been incurred at any particular point. Certainly, again, there's no case authority that's been cited for that proposition. And most importantly, that position is belied by the whole statutory scheme of Oregon, which sets forth a requirement that if a party wants to know the specific amounts that are due, that it simply has to request notice from the trustee or request an itemization from the trustee. In this particular case, no request was made. There's no indication that if a request had been made, that it wouldn't have been provided. And in fact, there's really no indication here that Stations West didn't know the precise amounts that were due at the time of foreclosure. So the notice on its face complied with Oregon law. And even if it didn't comply with Oregon law, Oregon law makes it very clear that the sole remedy for improper notice to any party which is entitled to notice but doesn't receive it or receives inadequate notice is to prove, among other things, that the party could have and would have paid the debt in full and had an opportunity to be able to cure the default had it been provided notice, and to prove that it suffered, among other things, that it suffered damages as the proximate result of its loss of a cure right. There is no evidence in this case, none whatsoever presented by Stations West, that it could have cured the default, that it was in a position to cure the default, or even that it was in a position to make a substantial payment on the default. The only evidence of record was the evidence that was presented by BP, which indicates that Stations West had no money.  Stations West was owed a number of creditors, among them BP, in addition to the bank. There is simply no evidence whatsoever that Stations West was in a position to cure the default. Now, let me just address very, very briefly the argument with respect to trespass. Stations West claims that BP initially, in its complaint, claimed that it trespassed by virtue of taking possession of the property in a wrongful foreclosure. For the very first time, in response, in its reply brief to BP's motions for summary judgment, Stations West argued that someone from BP entered onto the property on or about October 4 or 5 of 2006, which was contrary to the allegations of the complaint. The district court treated that as essentially an invitation for leave to amend and used its discretion to deny that request. You've covered all of this. We have, Your Honor. So unless the Court has any questions. No, I don't. All right. May it please the Court, Gary Gross, appearing for Appellee Joel Parker. I'd just like to address a couple of remarks that Mr. Sleminski made. I think there was a finding at the district court that the notice was adequate, and that was in the Stations West motion for summary judgment, which was granted. So the law of the case is that the notice was adequate. Secondly, Mr. Sleminski says, for the first time now in this courtroom, that 86-742 only applies to omitted junior lien holders. His previous argument had been that the reason 86-742 didn't apply is because it didn't apply when there was defective notice. It only applied when there was no notice. I think it does apply in the defective notice situation. It does apply in this situation because if a notice is defective, the party can ask for more information under 86-757, and if that information is not provided under 86-759, the person then has the remedy that is provided under 86-742. So 86-742 would apply in this case had Stations West requested the information that they thought was lacking from the notice. They didn't do that, so that's one predicate fact, that they failed to plead and their complaint was properly dismissed. Okay. All right. Thank you. All right. I don't know if you have any time left over, does he? Okay. Well, when most of us studied math, the sum of 2 plus 2 was 4, and the legislature created a statute that said you had to state the sum owing on the obligation, and the only reasonable inference of that is all you have to do, it is not rocket science, all you have to do is state how much is owed. And if 50,000 attorney fees is owed, they had late fees, they had money in advance, they said for taxes or whatever, all they had to do was state it. Now, it's true there is a statute that says people can call and find out how much, but the requirement has to be in the deed of trust, and the statement that says you can call to find out how much is not in the notice of default, nor is it required to be. In our position, it is defective. I don't know how anybody could say that 742 applies when it specifically applies only to interests created in the property subsequent to the reporting of the deed of trust. Thank you, Your Honor. Thank you. The matter will stand submitted. And now we come to Gloria Jean Peterson, Tri-County Metropolitan Transportation District of Oregon.
judges: Pregerson, Rymer, Tashima